UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TODD GARY JOHNSON,

    Plaintiff,

v.                                                       Case No. 8:21-cv-1853-WFJ-CPT

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

    The Plaintiff seeks judicial review of the Commissioner's decision denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). For the reasons discussed below, I respectfully recommend that the Commissioner's decision be affirmed.

I.

    The Plaintiff was born in 1975, has a high school education, and has past relevant work experience as a painter, cook, and fire fighter. (R. 54, 80, 88). In July 2019, the Plaintiff applied for DIB and SSI, alleging disability as of June 29, 2018, due

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Kijakazi is substituted for Commissioner Andrew M. Saul as the Defendant in this suit.

to varicose veins, back problems, vision problems, and a heart problem. (R. 80–81, 91–92). The Social Security Administration (SSA) denied the Plaintiff's applications both initially and on reconsideration. (R. 89, 100, 121, 133).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter in October 2020. (R. 47–75, 185–86). The Plaintiff was represented by counsel at that proceeding and testified on his own behalf. (R. 51–52, 55–68). A vocational expert (VE) also testified. (R. 68–72).

In a decision issued in January 2021, the ALJ determined that the Plaintiff (1) had not engaged in any substantial gainful activity since his alleged onset date in June 2018; (2) had the severe impairments of bigeminy, varicose veins, and degenerative disc disease; (3) did not, however, have an impairment or combination of impairments that met or medically equaled any of the listings;[2] (4) had the residual functional capacity (RFC) to perform light work subject to certain postural and environmental limitations;[3] and (5) based on the VE's testimony, could not engage in his past relevant work but was capable of making a successful adjustment to other jobs that exist in

---

[2] The listings are found at 20 C.F.R. pt. 404, subpt. P, App'x 1, and catalog those impairments that the SSA considers significant enough to prevent a person from performing any gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). When a claimant's affliction matches an impairment on the list, the claimant is automatically entitled to disability benefits. *Id.*; *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

[3] Those limitations included that the Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently; could stand and/or walk for four hours and sit for six hours in an eight-hour workday; could occasionally climb ramps, stairs, ladders, ropes, or scaffolds; and could frequently balance, stoop, kneel, crouch, and crawl. (R. 36).

significant numbers in the national economy. (R. 33–41). In light of these findings, the ALJ concluded that the Plaintiff was not disabled. (R. 41).

The Appeals Council denied the Plaintiff's request for review. (R. 6–9). Accordingly, the ALJ's decision became the final decision of the Commissioner.

II.

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).[4] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)).[5] Under this process, an ALJ must assess whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals any of the listings; (4) has the RFC to engage in his past relevant work; and (5) can perform other jobs in the national economy given his

---

[4] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

[5] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

RFC, age, education, and work experience. *Id.* (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)). Although the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1279 (11th Cir. 2020) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove he cannot engage in the work identified by the Commissioner. *Goode*, 966 F.3d at 1279. In the end, "the overall burden of demonstrating the existence of a disability . . . rests with the claimant." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

     A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the matter after a hearing. 42 U.S.C. § 405(g). Judicial review is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is buttressed by substantial evidence. *Id.*; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019) (citations and quotations omitted). In evaluating

whether substantial evidence bolsters the Commissioner's decision, a court "may not decide the facts anew, make credibility determinations, or re-weigh the evidence." *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)). While a court will defer to the Commissioner's factual findings, it will not extend such deference to her legal conclusions. *Keel-Desensi v. Berryhill*, 2019 WL 1417326, at *2 (M.D. Fla. Mar. 29, 2019) (citing *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)).

## III.

The Plaintiff raises two challenges on appeal. First, he claims that the ALJ failed to properly evaluate the opinion of the Plaintiff's pain management physician, Dr. Saqib Khan, and to provide substantial evidence to support the ALJ's conclusion that Dr. Khan's opinion was not persuasive. (Doc. 19). Second, he asserts that the ALJ erred by not including the Plaintiff's use of a cane as part of his RFC determination. *Id*. Upon careful review of the parties' submissions and the pertinent portions of the record, I find that the Plaintiff's challenges lack merit.

## A.

As noted above, the ALJ's task at step four is to determine the claimant's RFC and his ability to perform his past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545, 416.920(a)(4)(iv), 416.945. To do so, an ALJ "must consider all medical opinions in a claimant's case record, together with other relevant evidence." *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (per curiam) (citing 20 C.F.R. § 404.1527(b)). Medical opinions are statements from physicians or

5

other acceptable medical sources concerning what a claimant may be able to do despite his impairments; whether the claimant is limited in his ability to perform various work activities; and whether the claimant can see, hear, or use his other senses or "adapt to environmental conditions, such as temperature extremes or fumes." 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).

The Regulations governing the assessment of medical opinions were amended for disability applications filed on or after March 27, 2017, as this one was. 20 C.F.R. §§ 404.1520c, 416.920c; *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 n.4 (11th Cir. 2021). The ALJ now determines the persuasiveness of a medical opinion instead of generally basing its weight on the opinion's source. *Compare* 20 C.F.R. §§ 404.1527, 416.927(c) *with* 20 C.F.R. §§ 404.1520c, 416.920c. In conducting this analysis, an ALJ must consider the following five factors: (1) supportability; (2) consistency; (3) the source's relationship with the claimant; (4) the source's area of specialization; and (5) any other pertinent factors "that tend to support or contradict a medical opinion," such as whether the source is familiar with the other record evidence or has "an understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c; *see also Nixon v. Kijakazi*, 2021 WL 4146295, at *3 (M.D. Fla. Sept. 13, 2021) (citation omitted).

Of these factors, supportability and consistency are the most important. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c; *Nixon*, 2021 WL 4146295, at *3 (citation omitted). Supportability addresses the extent to which a medical source has articulated record evidence bolstering his own opinion, while consistency concerns the degree to

which a medical source's opinion conforms to other evidence in the record. 20 C.F.R. §§ 404.1520c(b)(1)–(2), (c)(1)–(2), 416.920c(b)(1)–(2), (c)(1)–(2); *Barber v. Comm'r of Soc. Sec.*, 2021 WL 3857562, at *3 (M.D. Fla. Aug. 30, 2021) (citation omitted). The amended Regulations require an ALJ to discuss supportability and consistency but do not obligate him to explain how he evaluated the other three factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Freyhagen v. Comm'r of Soc. Sec. Admin.*, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) (citation omitted). In the end, the amended Regulations—like their predecessors—do not preclude an ALJ from rejecting any medical opinion if the evidence buttresses a contrary finding. *Freyhagen*, 2019 WL 4686800, at *2 (citing *Wainwright v. Comm'r of Soc. Sec. Admin.*, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007) (per curiam); *Syrock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam)).

In this case, the Plaintiff sought pain management treatment from Dr. Khan at Pain Medicine Inc. beginning in June 2019. (R. 414). At his first appointment, the Plaintiff reported left leg pain due to varicose veins, left ankle/foot pain, and low back pain. *Id.* Approximately one month later, Dr. Khan prepared a physical assessment, in which he opined that the Plaintiff would "need to recline or lie down during a hypothetical [eight]-hour workday in excess of the typical [fifteen]-minute break in the morning, the [thirty]-[sixty] minute lunch, and the typical [fifteen]-minute break in the afternoon." (R. 410). Dr. Khan further opined, *inter alia*, that the Plaintiff could sit for a total of four hours and stand/walk for a total of three hours during an eight-hour

7

workday; could not lift and carry twenty pounds; and was limited in certain respects in his ability to repetitively reach, handle, or finger. *Id.*

In his decision, the ALJ discussed the findings contained in Dr. Khan's records. (R. 37). Specifically, the ALJ stated:

> [The Plaintiff] was treated from June 2019 to August 2020 at Pain Medicine Inc. for varicose veins and back and extremity pain with prescription medication. The [Plaintiff] was generally noted to have diminished strength, decreased reflexes in the biceps and triceps, and tenderness in the cervical facet joints, but normal range of motion in the lumbar spine, no edema, and normal straight leg raise testing. Of note, these examinations were word for word identical. This treatment apparently included a left small saphenous vein ablation in February 2020, although the record does not contain a surgical report.

*Id.* (internal citations omitted). The ALJ also referenced a venous ultrasound performed by Dr. Khan in August 2019, which the ALJ described as reflecting:

> left bulging/refluxing varicose veins and left great and small saphenous vein reflux greater than 0.5 seconds, but no evidence of acute obstructions or venous reflux of the deep veins of the lower extremities bilaterally and continuous waveforms throughout the deep system.

*Id*. at 38.

In addition to Dr. Khan's materials, the ALJ reviewed other medical evidence in the record, including—of relevance here—the care the Plaintiff received at Central Florida Health Care. The ALJ observed in this regard:

> The [Plaintiff] was treated at Central Florida Health Care in June and July 2019 for varicose veins. He was noted to have tender varicose veins in the left lower extremity and diminished bilateral radial and pedal pulses, but intact sensation, no edema in the extremities, normal movement of all extremities, and normal motor strength (Exhibit 2F).

> * * *
>
> The [Plaintiff] was treated [again] in 2020 at Central Florida Health Care for varicose veins of the lower extremity, abnormal heartbeat, and low back pain. Nonetheless, the [Plaintiff's] physical examinations showed no edema, normal range of motion in the lumbar spine, normal motor strength, normal movement of all extremities, intact sensation, normal cardiovascular examinations with regular heart rate and rhythm and no murmur, and a normal gait and station (Exhibit 12F). In addition, a magnetic resonance imaging (MRI) scan of the [Plaintiff's] lumbar spine from July 2020 revealed disc desiccation with a central disc herniation and annular tear at L4-5,[6] resulting in mild central canal stenosis (Exhibit 16F).
>
> * * *
>
> [In sum, t]he [Plaintiff's] treatment records from Central Florida Health Care from 2019-2020 showed tender varicose veins in the left lower extremity and diminished bilateral radial and pedal pulses prior to his ablation surgery. However, subsequent to his surgery, the records showed no edema, normal range of motion in the lumbar spine, normal motor strength, normal movement of all extremities, intact sensation, normal cardiovascular examinations with regular heart rate and rhythm and no murmur, and a normal gait and station (Exhibit 2F and 12F).

(R. 37–38).

And lastly, pertinent here as well, the ALJ described the assessments of a consultative physician, Dr. Anand Rao, who examined the Plaintiff in October 2019. As the ALJ noted in his decision, Dr. Rao reported that while the Plaintiff "had multiple large varicose veins from the ankle to the mid-thigh area on his left leg and

---

[6] L4 and L5 refer to the fourth and fifth discs of the lumbar spine, respectively. *See* SPINE-HEALTH, https://www.spine-health.com/conditions/spine-anatomy/all-about-l4-l5-spinal-segment (last visited July 28, 2022).

slight tenderness in [his] back," he "had no pedal edema, normal range of motion in the joints and spine, 5+ motor strength in all extremities, normal sensation, normal grip strength, normal fine finger movements, regular heart rate with no murmurs, and a normal gait." (R. 38). The ALJ further noted that, according to Dr. Rao, the Plaintiff could "manipulate objects, heel and toe walk normally, and get up from the chair and on the table fairly easily (Exhibit 10F)." *Id.*

In evaluating Dr. Khan's opinion later on in his decision, the ALJ found it unpersuasive, reasoning:

> [Dr. Khan's opinion] was given just as the [Plaintiff's] treatment began and is inconsistent with the objective medical imaging and the treatment records from Central Florida Health Care. The MRI of the [Plaintiff's] lumbar spine and venous ultrasound showed only mild problems. In addition, as noted above, the [Plaintiff's] treatment records from Central Florida Health Care from 2020 showed no edema, normal range of motion in the lumbar spine, normal motor strength, normal movement of all extremities, intact sensation, normal cardiovascular examinations with regular heart rate and rhythm and no murmur, and a normal gait and station. Of note, the consultative physician[, Dr. Rao,] reported in October 2019 that the [Plaintiff] had normal grip strength and fine finger movements and he could manipulate objects.

(R. 39) (internal citations omitted).

The Plaintiff now argues that the ALJ did not adequately "show how Dr. Khan's less than sedentary RFC is inconsistent with or unsupported by the medical evidence of record concerning [the Plaintiff's] varicose veins." (Doc. 19 at 15). This contention is unavailing.

10

Beginning with the matter of consistency, the ALJ found—as explained previously—that contrary to Dr. Khan's assessment of the Plaintiff's limitations, the Central Florida Health Care records revealed "no edema, normal range of motion in [the Plaintiff's] lumbar spine, normal motor strength, normal movement of all [of the Plaintiff's] extremities, intact sensation, normal cardiovascular examinations with [a] regular heart rate and rhythm and no murmur, and a normal gait and station." (R. 39). The ALJ observed as well that the MRI of the Plaintiff's lumbar spine reflected only "mild problems." *Id.* In addition, as also explained above, the ALJ found that Dr. Khan's opinion conflicted with Dr. Rao's October 2019 assessment that the Plaintiff had "normal grip strength and fine finger movements and . . . could manipulate objects." *Id.*

As for the matter of supportability, as set forth above, the ALJ specifically discussed that Dr. Khan's treatment notes evidenced "normal range of motion in the [Plaintiff's] lumbar spine, no edema, and normal straight leg raise testing." (R. 37). And as further set forth above, the ALJ noted as well that the results of the August 2019 venous ultrasound performed by Dr. Khan displayed only "mild problems." (R. 39).

In sum, taken as a whole, the ALJ's citation to and detailed description of the record evidence compiled by Dr. Khan and other providers sufficiently buttressed the ALJ's assessment of Dr. Khan's recommendations and allows for the Court to engage in meaningful review on appeal. *Rodriguez v. Comm'r of Soc. Sec.*, 2022 WL 807443, at *7 (M.D. Fla. Mar. 17, 2022) (rejecting an argument that the ALJ's persuasiveness

determination was deficient where the ALJ referred to "prior portions of her decision in which she provided in-depth evaluations of the evidence of record"); *Roussin v. Comm'r of Soc. Sec.*, 2021 WL 6205948, at *10 (M.D. Fla. Dec. 16, 2021) (concluding that the ALJ's evaluation of consistency and supportability was appropriate because even though the "ALJ did not explicitly state the findings on which he relied, the findings [were] evident in light of the ALJ's decision as a whole") (internal citations omitted), *report and recommendation adopted*, 2022 WL 19698 (M.D. Fla. Jan. 3, 2022); *Nixon*, 2021 WL 4146295, at *5 ("Although the ALJ did not explicitly discuss [a] particular opinion's supportability and consistency as required by the Regulations, when read in context, it becomes evident the ALJ did not find the opinion supported by or consistent with the balance of the evidence."); *Lamirande v. Comm'r of Soc. Sec.*, 2022 WL 1504756, at *4 (S.D. Fla. Apr. 21, 2022) (concluding the ALJ "adequately explained the supportability factor, even though the ALJ did not use the words 'support' or 'supportability[ ]'" because the ALJ cited multiple examples to explain why he found a physician unpersuasive, a number of which came from the physician's own records), *report and recommendation adopted*, 2022 WL 1499943 (S.D. Fla. May 12, 2022); *Wandoff o/b/o M.L.M v. Kijakazi*, 2022 WL 1259873, at *5 (S.D. Ga. Feb. 16, 2022) (finding that the ALJ properly articulated her consideration of a medical opinion where she discussed relevant records underlying the supportability and consistency factors throughout her decision), *report and recommendation adopted*, 2022 WL 686322 (S.D. Ga. Mar. 8, 2022).

Although I believe this finding to be dispositive of the Plaintiff's first challenge, I address several of the other arguments he posits as part of that claim of error in the interests of completeness. One of these is his assertion that the ALJ's decision focused "almost entirely" on his back pain and irregular heartbeat, as opposed to the issues arising from his varicose veins. (Doc. 19 at 15). This contention, however, ignores the ALJ's reliance on Dr. Khan's August 2019 venous ultrasound, which pertained directly to the Plaintiff's leg problems, as well as the ALJ's recitation of the medical records reflecting the Plaintiff's normal motor strength, his normal movement of all his extremities, and his normal gait and station. (R. 39).

I am likewise unpersuaded by the Plaintiff's disagreement with the ALJ's description of the venous ultrasound as evidencing only "mild problems." (Doc. 19 at 18–19). To bolster his position, the Plaintiff points to notes prepared by Dr. Khan's medical partner, Dr. William Vargas, which indicate that the Plaintiff's "left great saphenous vein [was] severe[ly] dilated with severe reflux." (R. 468). The problem with the Plaintiff's argument is twofold. As an initial matter, it is well settled that an ALJ need not expressly mention every piece of record evidence in his decision.[7] *See Stowe v. Soc. Sec. Admin., Comm'r*, 2021 WL 2912477, at *4 (11th Cir. July 12, 2021) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)). Moreover, Dr. Khan himself stated that the venous ultrasound revealed

---

[7] The Plaintiff also argues more broadly that the ALJ failed to consider Dr. Vargas's records that supported Dr. Khan's opinions. To the contrary, the ALJ cited exhibits containing treatment notes signed by both Dr. Khan and Dr. Vargas. (R. 37).

13

"[n]o evidence of acute obstruction or venous reflux of the deep veins of the lower extremities bilaterally" and "no obvious evidence of thrombus or insufficiency" with respect to the left leg. (R. 570).

I also find unavailing the Plaintiff's quarrel with the ALJ's determination that Dr. Khan prepared his "treating source" opinion "just as the [Plaintiff's] treatment began" without providing "follow-up support for his assertion that [the Plaintiff's] vein condition improved." (Doc. 19 at 17) (citing R. 39). This contention fails to account for, among other things, the ALJ's assessment that the records "subsequent to [the Plaintiff's] surgery" revealed, *inter alia*, "no edema," "normal movement of all [the Plaintiff's] extremities" (presumably including his legs), and "a normal gait and station." (R. 37–38) (citing Exhibit 2F, 12F). It additionally overlooks the ALJ's later determination that the Plaintiff "had generally normal physical examinations at Central Florida Health Care in 2020." (R. 39) (citing Exhibit 12F). As for the Plaintiff's suggestion that Dr. Khan's opinion carried more weight because he purportedly was a "treating source," the Regulations make clear that although an ALJ may consider the claimant's treatment relationship with a medical provider, he is not required to do so. See 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

I find unconvincing as well the Plaintiff's final argument that substantial evidence supports Dr. Khan's assessments, including Dr. Khan's observations that the Plaintiff was "walking with difficulty" and that his varicose veins were "dilated and getting worse," as well as the records from another provider, Dr. Larry Thomas, who prescribed a cane for the Plaintiff. (Doc. 19 at 19–21). While it is true there may be

14

items in the record buttressing Dr. Khan's opinion, it is not the function of the Court to re-weigh the evidence at this juncture. *Carter*, 726 F. App'x at 739 (stating that a court "may not decide the facts anew, make credibility determinations, or re-weigh the evidence") (citing *Moore*, 405 F.3d at 1211); *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam) ("Under a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion.") (citing *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam)). Rather, the Court's obligation is confined to analyzing whether the ALJ relied on adequate evidence and applied the proper legal standards. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (observing that courts must defer to the Commissioner's decision if it is supported by substantial evidence and if the Commissioner followed the appropriate legal standards); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (noting that when the Commissioner's decision is supported by substantial evidence, a court must affirm it even if the court would have reached a contrary result and even if it finds that "the evidence preponderates against" the Commissioner's decision) (internal citation and quotations omitted). By my review, the ALJ did so here.

### B.

As noted above, the ALJ found at step four that the Plaintiff had the RFC to engage in a limited range of light work subject to various postural and environmental limitations. (R. 36–39). In arriving at this determination, the ALJ acknowledged the

15

Plaintiff's testimony that he used a cane "at times." (R. 37). The ALJ also described a September 2019 opinion of Dr. Thomas that a cane was "medically necessary for the [Plaintiff] for leg pain and stability." (R. 39). The ALJ deemed this assessment to be "generally unpersuasive," concluding:

> [A]lthough it could possibly have been accurate at the time it was given, [the opinion] was given prior to [the Plaintiff's] ablation surgery in February 2020 and he had generally normal physical examinations at Central Florida Health Care in 2020. Additionally, this opinion was given at the time that Dr. Thomas reported the [Plaintiff] had not been using his compression socks as directed for the previous few months.

(R. 39) (internal citations omitted).

The crux of the Plaintiff's second challenge is that the ALJ's RFC determination contravenes Social Security Ruling (SSR) 96-9p by failing to include the Plaintiff's need for a cane.[8] SSR 96-9p provides, in relevant part:

> [T]here must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case.

1996 WL 374185, at *7 (July 2, 1996).

---

[8] Although SSR 96-9p addresses the use of hand-held assistive devices in circumstances where a claimant's RFC restricts him to sedentary work, some courts have also considered it to situations where a claimant's RFC confines him to light work. *See, e.g., Williams v. Acting Comm'r of Soc. Sec. Admin*, 2019 WL 2511592 (M.D. Fla. June 18, 2019); *Kendrick v. Comm'r of Soc. Sec.*, 2018 WL 4126528 (M.D. Fla. July 9, 2018), *report and recommendation adopted*, 2018 WL 4112832 (M.D. Fla. Aug. 29, 2018). The Plaintiff asserts, and Commissioner does not dispute, that SSR 96-9p governs here and both parties rely on that ruling as part of their analyses. I therefore assume, without deciding, that SSR-96-9p applies in this case.

By its terms, SSR 96-9p mandates that a claimant "present medical documentation (1) establishing [his] need for a cane or other device and (2) describing the circumstances for which it is needed." *Williams*, 2019 WL 2511592, at *3 (citations omitted). "Without [such a] showing, [however,] an ALJ is not required to include the use of a cane in a claimant's RFC." *Id.* (citation omitted). That said, there is case authority that where "the record contains information showing a claimant uses a cane, an ALJ should explicitly consider whether the claimant has a medical necessity for using such a device and affirmatively reject [it], if appropriate, so the reviewing [c]ourt can be sure whether he intended to recognize [the] use of a cane." *Ebenroth v. Saul*, 2020 WL 583057, at *7 (S.D. Ga. Jan. 14, 2020) (citing *Carter v. Astrue*, 2011 WL 4502024, at *10 (M.D. Fla. Sept. 28, 2011)), *report and recommendation adopted*, 2020 WL 583166 (S.D. Ga. Feb. 5, 2020).

Against this backdrop, I find that the ALJ's decision not to incorporate a cane in his RFC determination comports with SSR 96-9p and is supported by substantial evidence. As described above, the ALJ "explicitly consider[ed]" the Plaintiff's need for a cane and provided several reasons for discounting Dr. Thomas's opinion on the matter. *Ebenroth*, 2020 WL 583057, at *7. Those reasons, as also discussed above, were that Dr. Thomas prescribed the cane during a period when the Plaintiff was not wearing his compression socks and before the Plaintiff's ablation surgery, and that the

Plaintiff had "generally normal" physical examinations after his ablation surgery. (R. 39).[9]

The Plaintiff's assertion that the ALJ impermissibly "play[ed] doctor" by opining on the "appropriate treatment" for his alleged ambulatory issues is misplaced. (Doc. 19 at 28). Contrary to the Plaintiff's suggestion, an ALJ does not "play doctor" simply by evaluating a claimant's RFC. *Castle v. Colvin*, 557 F. App'x 849, 853–54 (11th Cir. 2014) (per curiam) ("[T]the ALJ did not 'play doctor' in assessing [the claimant's] RFC, but instead properly carried out his regulatory role as an adjudicator responsible for assessing [the claimant's] RFC."). "Indeed, the pertinent regulations state that the ALJ has the responsibility for determining a claimant's RFC." *Id.*; *see also Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016) (per curiam) (same).

The Plaintiff's contention—similar to the one he made in his first challenge—that there is insufficient evidence buttressing the ALJ's conclusion the Plaintiff recovered after the ablation surgery likewise lacks merit. (Doc. 19 at 28–29). The Plaintiff predicates this contention in his second challenge on documentation in the record indicating that the Plaintiff experienced "continued difficulty walking even after

---

[9] It bears noting that although the Plaintiff seeks to rely on SSR 96-9p, he neglects to address a deficiency in Dr. Thomas's opinion as it relates to that ruling. Specifically, Dr. Thomas's assessment does not include a description of the circumstances for which the cane was necessary as required by SSR 96-9p, such as "whether [it was needed] all the time, periodically, or only in certain situations;" for what type of "distance and terrain; and any other relevant information." 1996 WL 374185, at *7. Instead, Dr. Thomas indicated in his opinion only that the Plaintiff needed the cane "for leg pain and stability." (R. 39).

his [ ] venous ablation of the left great saphenous vein extremity" and that he also testified he used a cane to walk. (Doc. 19 at 28–29). This argument, however, again misconstrues the Court's role on appeal and improperly asks the Court to re-weigh the evidence, which it cannot do. *Carter*, 726 F. App'x at 739; *Sims* 706 F. App'x at 604 (11th Cir. 2017) *Miles*, 84 F.3d at 1400. It also disregards the evidence cited by the ALJ in his decision, as discussed above.

## IV.

For the foregoing reasons, I recommend:

1. The Commissioner's decision be affirmed.

2. The Clerk of Court be directed to enter Judgment in the Commissioner's favor and to close the case.

Respectfully submitted this 5th day of August 2022.

*[signature]*
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

## NOTICE TO PARTIES

A party has fourteen (14) days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections, or to move for an extension of time to do so, waives that party's right to challenge on appeal any unobjected-to factual finding(s) or legal

conclusion(s) the District Judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Copies to:
Honorable William F. Jung, United States District Judge
Counsel of record